UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MICHELLE GRANT ERVIN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1632 (RMC) |
| | ) | |
| **HOWARD UNIVERSITY,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DISCOVERY ORDER

Dr. Michelle Grant Ervin sues Howard University and Howard University Hospital after she was relieved of her duties as Chair of the Emergency Medicine Department ("EMD") at Howard University Hospital and ultimately discharged. The parties have presented a discovery dispute to the Court concerning the application of the D.C. Health Care Peer Review Act, adopted by the Council of the District of Columbia in 1992 and codified at D.C. Code § 44-801 *et seq*. Defendants have withheld a series of documents, of which they brought a representative sample to a hearing on the matter for the Court's *in camera* review.

Generally, D.C. Code § 44-805 provides that a broad class of all documents of a peer review body, information provided to or obtained by a peer review body, and the identity of persons providing information to a peer review body "shall be confidential and shall not be discoverable nor admissible into evidence in any civil . . . proceeding." D.C. Code § 44-805(a)(1). Persons who provide information to a peer review body may generally not "be compelled to testify or give discovery in any civil . . . proceeding relating to any matter presented or discussed at those proceedings, or any information provided to or obtained by . . . the body or its members." D.C. Code

§ 44-805(a)(2). The Act defines "peer review" as follows:

> "Peer review" means the procedure by which health-care facilities and agencies, group practices, and health professional associations monitor, evaluate, and take actions to improve the delivery, quality, and efficiency of services within their respective facilities, agencies, and professions, including recommendations, consideration of recommendations, actions with regard thereto, and implementation of the actions.

D.C. Code § 44-801(5). "Peer review" is further defined by the Act to concern:

> (A) Matters affecting membership of a health professional on the staff of a health-care facility or agency;
>
> (B) The . . . denial, modification, limitation, or suspension of clinical privileges to provide health-care services at a health-care facility or agency;
>
> (C) Matters affecting employment and terms of employment of a health professional by a health-care facility, agency, or group practice;
>
> . . .
>
> (E) Review of qualifications, activities, conduct, or performance of any health professional . . . ; [and]
>
> (F) Review of the quality, efficiency, or utilization of services provided by a health professional, a health-care facility, agency, or group practice[.]

D.C. Code § 44-801(5)(A)-(C), (E), (F). And even further, the Act defines a "peer review body" as

> a committee, board, hearing panel or officer, reviewing panel or officer or governing board of a health-care facility or agency, group practice or health professional that engages in peer review, the health-care facility, agency, group practice or health professional association which establishes or authorizes or is governed by it, and a director, officer, employee, or member of such an entity.

D.C. Code § 44-801(6). Pursuant to these provisions of District law, the Defendants have refused to release in discovery approximately 33 otherwise discoverable documents, 17 of which appear to consist of reports that relate to health and safety considerations concerning the EMD, as well as parts

of the internal Equal Employment Opportunity Investigation Report ("EEO Report"), generated as a result of Dr. Ervin's claims, and attached documents. The Defendants' position, as articulated by counsel during the deposition of EMD Administrator Gavin M. Latney, is that all testimony that "involves health and safety of patients or efforts in the improvements of patient safety and delivering patient care" are privileged and non-discoverable within the reach of D.C.'s peer review law. Pl.'s Supplemental Pleading, Ex. 1 at 2 (attaching excerpts of deposition of Mr. Latney to show an example of when Defendants invoked the "peer review" privilege).

## ANALYSIS

Defendants over-read the D.C. Code provisions on peer review. Not every recollection or document that "involves health and safety of patients" is protected from discovery. While closer to the mark, not even every recollection or document that involves "efforts in the improvements of patient safety and delivering patient care" is protected from discovery by the Act. It is certainly true that the D.C. Council has adopted a broad statute, intending to protect true "peer review" documentation and information from discovery, except in limited circumstances.[1] The substance of "peer review" and its privileged participants are broadly expressed in the Act. But the Council protected *only* materials related to peer review. Documents, witnesses' knowledge, and

---

[1] At D.C. Code § 44-805(c), the statute provides that "[t]his section [limiting the use of peer review reports, records, or statements in judicial proceedings] shall not affect the right of any health professional to discover or to have admitted into evidence the minutes and reports of a peer review body concerning the health professional for the limited purpose of adjudicating the appropriateness of an adverse action affecting the employment, membership, privileges, or association of the health professional by the peer review body." Defendants assert that the decisions concerning Dr. Ervin were made solely by Dr. Thomas Gaiter, the Medical Director at Howard University Hospital, and her direct supervisor, and not by any peer review body. The Complaint accuses Dr. Gaiter of gender-based bias and retaliation against Dr. Ervin. Compl. ¶¶ 17, 19, 20, 24, 28, 30, 32, 33, 34, 35, 39, 41, 42, 43, 44, 45, 46, and 54. More generally, "Defendants" are alleged to have retaliated against Dr. Ervin after she filed an internal complaint of discrimination. *Id.* ¶¶ 57-59.

recollections of events and opinions discerned and developed outside the peer review process are not protected. *See* D.C. Code 44-805(b) ("Primary health records and other information, documents, or records available from original sources shall not be deemed nondiscoverable or inadmissible merely because they are a part of the files, records, or reports of a peer review body."); *see also Brem v. Drs. DeCarlo, Lyon, Hearn & Pazourek, P.A.*, 162 F.R.D. 94, 101 (D. Md. 1995) ("An opinion derived from information or knowledge obtained independent of the [peer review process] would not be covered by the statute.") (citing *Cruger v. Love*, 599 So. 2d 111, 115 (Fla. 1992) (noting that peer review participants "can be compelled to state what they actually know to be true, but they cannot say whether they disclosed this same information to a board or committee")). While these cases interpret peer review laws in other jurisdictions, their logic applies just as easily to the D.C. Health Care Peer Review Act.

Having reviewed the EEO Report *in camera*, the Court concludes that a fair amount of the redacted information in it is not "peer review" material at all; it is merely information that might "involve[] health and safety of patients" or efforts to improve patient care or opinions of professional staff that was developed in the normal course of day-to-day professional services at the Hospital. *See Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991) (noting that it was not "sufficient merely to allude to the Hospital's general interest in keeping peer review processes out of the public eye. That rationale sweeps far too broadly and would encompass all litigation involving public and private institutions that provide essential services to the public").

Two things are obvious from the D.C. peer review statute and one is not. First, the files, records, findings, opinions, recommendations, evaluations, and reports of any peer review body, as well as information provided to, information obtained by, and the identity of persons

providing such information to a peer review body, are not discoverable. *See* D.C. Code § 44-805(a)(1). Second, a peer review body can be a (1) committee, (2) board, (3) hearing panel or officer of a hearing panel, (4) reviewing panel or officer of a reviewing panel, or (5) governing board of a health care facility[2] that establishes the peer review body. *See* D.C. Code § 44-801(6). What is not so obvious is the meaning of the last phrase in the definition of "peer review body": the definition concludes that a peer review body also includes "a director, officer, employee, or member of such an entity." D.C. Code § 44-801(6). The question one immediately asks is what is the antecedent of "such an entity." Does the term refer back to a peer review body, in its various incarnations, or to the health care facility that establishes the peer review body?

To answer this question, the Court looks to the functional purpose of the law. As have other jurisdictions, the District "ensur[es] the confidentiality of peer review proceedings . . . [in order to] foster effective review of medical care and thereby improve the quality of health care." *Brem*, 162 F.R.D. at 97 (addressing § 14-501 of the Maryland Health Occupations Code, that state's medical review committee statute). "[C]onfidentiality is essential because 'physicians are frequently reluctant to participate in peer review evaluations for fear of exposure to liability, entanglement in malpractice litigation, loss of referrals from other doctors, and a variety of other reasons.'" *Id.* (quoting *Baltimore Sun Co. v. Univ. of Md. Med. Sys. Corp.*, 584 A.2d 683, 686 (Md. 1991)). The Maryland medical review committee statute was intended to provide 'broad statutory protection.'" *Id.* at 98 (quoting *Baltimore Sun*, 584 A.2d at 687). Similarly, the purpose of the D.C. Health Care Peer Review Act is to "expand, strengthen[,] and clarify the immunity and confidentiality provisions

---

[2] The Court limits its discussion to health care facilities since the facts concern Howard University and Howard University Hospital.

of the former 1978 Medical Records Act." Defs.' Mem. at 1 (quoting Report on the Committee on consumer and Regulatory Affairs on Bill 9-355 at 3 (October 27, 1992)) (internal quotation marks omitted).  Accordingly, Defendants argue that they *and* their directors, officers, employees and members all qualify as one or more peer review bodies because they are part of "such an entity."

With this broad reading of the D.C. Health Care Peer Review Act, the Defendants believe that *any* statement made by one of its staff members or officers that might reflect poorly on patient care cannot be discovered in litigation.  That is not the case.  Only those statements made in a *peer review process* are non-discoverable; a physician's observations of events in the Hospital, opinions on patient care and the skills of colleagues, or documentation of problems or concerns are not privileged, except insofar as any reports of such observations, opinions, or documentation are submitted to a peer review body.  However broadly a "peer review body" might be defined by the statute, there must be actual and functional elements of "peer review" being performed for the Act to apply.  The statute itself supports this interpretation by defining "peer review" as a "procedure." *See* D.C. Code § 44-801(5).  General observations and opinions on patient care, good or bad, that are not part of a peer review procedure merely constitute part of the normal experiences of professional life, not peer review.

Defendants' over-reading of the Act causes another kind of error in their analysis. Although they argue that all communications and recollections of issues involving health and safety of patients are non-discoverable and that their officers, including Dr. Gaiter, individually and collectively constitute "peer review" bodies, they attempt to persuade the Court that Dr. Ervin's loss of her position as Chair of the EMD and her termination did not result from a "peer review" process but that Dr. Gaiter made the decision, acting alone.  "[T]he decision to relieve Dr. Ervin of her duties

Chairman of the [EMD] was not the result of peer review activity. The decision was made by Thomas Gaiter, M.D. pursuant to his authority as Medical Director of Howard University Hospital." Defs.' Reply at 4. Defendants cannot have it both ways. Either Dr. Gaiter constitutes, for this purpose, a peer review entity because he is an officer/employee of the Hospital, as they argue, and his decision to relieve Dr. Ervin of her position resulted from his opinions of her skills gained from his participation in a peer review process, or he is not a peer review entity and his decision was not based on things he learned through a peer review process, but through normal day-to-day observations. The language and purpose of the statute support the first option and not the latter; the antecedent to "such an entity" is the health care facility that establishes a peer review body, which can include "a director, officer, employee, or member" of the health care facility when those people – individually or collectively – are performing peer review functions. Therefore, D.C. Code § 44-805(c), which authorizes release of peer review materials that constitute minutes and reports of a peer review body "for the limited purpose of adjudicating the appropriateness of an adverse action affecting . . . employment . . . [or] privileges" of a health care professional, applies to such minutes (or notes) and reports as Dr. Gaiter might have prepared concerning Dr. Ervin. For example, such "minutes" (or notes) and "reports" as Dr. Gaiter might have forwarded to his own superiors are subject to discovery.

Dr. Ervin advances a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Court must be mindful of both the legitimacy of the public policy concerns that animate the D.C. Health Care Peer Review Act and Dr. Ervin's rights to obtain the necessary

discovery to present her case.[3] As long ago as 1970, this Court recognized a "qualified privilege on the basis of [an] overwhelming public interest" to shield physician staff meetings at which "a retrospective review of the effectiveness of certain medical procedures" was discussed. *Bredice v. Doctors Hosp., Inc.*, 50 F.R.D. 249, 250-51 (D.D.C. 1970). Judge Howard F. Corcoran found:

> Confidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, *without a showing of exceptional necessity*, would result in terminating such deliberations. Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.
>
> The purpose of these staff meetings is the improvement, through self-analysis, of the efficiency of medical procedures and techniques. They are not part of current patient care . . . .

*Id.* at 250 (emphasis added). Judge Corcoran's analysis remains valid today. Accordingly, documentation that is part of *current* patient care is not "peer review" material. Peer review does not deal with the present; rather it looks at the past, in an effort to plan for the future. Documents related to current patient care may become useful in a *retrospective* effort to conduct peer review. Similarly, basic *facts* are not "peer review" material; but the opinions, critiques, and future planning arising from an analysis of basic facts constitute "peer review." Statistics on patient registration, for instance, may be used for peer review analysis but, by themselves, are merely facts and are discoverable, although how they were used and that they were used in a true peer review process

---

[3] State-law privileges "do not necessarily apply in federal court when the jurisdiction of the court is based on a federal question." *Brem*, 162 F.R.D. at 101 (citing *LeMasters v. Christ Hosp.*, 791 F. Supp. 188, 189 (S.D. Ohio 1991) and *Lewis v. Capital Mortgage, Invs.*, 78 F.R.D. 295, 313 (D. Md. 1977)).

would not be.

A few examples of the information redacted from the EEO Report will point out the differences between Defendants' over-broad reading of the Act and a proper reading that protects only "peer review" materials:

- Examples reported by Dr. Ervin to the EEO Investigator of alleged disparate treatment and gender bias are not "peer review" materials but her observations and opinions.  *See* EEO Report at 2.

- The description reported by Dr. Ervin of the management meetings and conferences, as well as the attendees, and the related purposes, does not reveal "peer review" material in any way.  *See* EEO Report at 7-8.

- Dr. Ervin's observations and opinions reported on pages 19-20 of the EEO Report did not arise in the context of "peer review" and are, therefore, fully discoverable. Even if they were "peer review" material, which they are not, the items redacted on these pages would be fully discoverable for the adjudication of Dr. Ervin's case.  *See* EEO Report at 19-20.

- The redactions on pages 22-24 of the EEO Report cover items that might have separately been the subject of some sort of "peer review" but in the context in which the information is presented, the witness is merely reporting on his day-to-day interactions, which are fully discoverable.  *See* EEO Report at 22-24.

- In contrast, the redactions on pp 13- 16 of the EEO Report, while over-broad, are not all entirely erroneous.  The Court cannot make the appropriate distinctions in this order without violating the intent and purpose of the Act and leaves it in the first

instance to the Defendants to reconsider their approach to this document and submit, *in camera*, a revised redacted copy that is consistent with this Order. *See* EEO Report at 13-16.

Accordingly, the Court directs the Defendants to re-evaluate, in conformity with this Order, all of the documents that have been withheld in whole or in part from discovery by Dr. Ervin.

A further status conference will be set by the courtroom deputy clerk. Defendants shall come prepared to present a revised redacted copy of the EEO Report and a revised analysis of the remaining withheld documents in accordance with this Order for *in camera* review by the Court.

**SO ORDERED.**


Date: August 23, 2006                                        /s/
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge